(118 App. Div. 840)

### WERTHEIMER et al. v. TALCOTT.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

1. FACTORS—COMMISSIONS.
    Plaintiff from time to time consigned goods to defendant, a factor; defendant insuring the goods for the benefit of himself and plaintiff according to their interests, and the premiums being paid by plaintiff. The contract between them provided that defendant should be entitled to 3¼ per cent. commission on sales of consigned goods, and that in case all the goods consigned should not be sold, and unsold goods should be transferred to other parties at the request of plaintiff, the factor should receive 1½ per cent. on goods so transferred. The goods in possession of the factor were injured by fire, and subsequently plaintiff expressed a desire that the loss be adjusted by turning over the goods to the insurer, and that the net cash value before the fire be paid by the insurer, which was done. Held, that the factor was not entitled to a sum amounting to 3¼ per cent. on the amount collected from the insurance companies, but to 1½ per cent. on such amount.
2. SAME—REIMBURSEMENT OF EXPENSES.
    Expenses incurred by the factor in employing a firm of insurance adjusters to protect his interests and those of plaintiff were properly allowed to the factor, though it appeared that other adjusters would have done the work more cheaply, in the absence of any showing of negligence or bad faith on the part of the factor.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Factors, §§ 63, 64.]

Appeal from Judgment on Report of Referee.
Action by Arthur M. Wertheimer and another against James Talcott. From a judgment in favor of defendant, plaintiffs appeal. Modified and affirmed.
Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, HOUGHTON, and LAMBERT, JJ.

Daniel P. Hays, for appellants.
Arthur C. Rounds, for respondent.

SCOTT, J. The plaintiffs appeal from a judgment entered upon the report of a referee. The action is by a principal against his factor, and involves the question as to the propriety of certain charges made by the factor.
The plaintiffs from time to time consigned goods to defendant, upon which the latter made advances, and paid certain charges, being en-

titled by agreement between the parties to be reimbursed from the proceeds of sale thereof, and also to the payment of interest and of certain specified commissions. On June 26, 1900, there were in the possession and control of defendant goods consigned to him by plaintiffs upon which he had made advances and paid charges, and which he held for sale and subject to such advances and charges. Defendant from time to time insured the goods consigned to him by plaintiffs against loss by fire, in his own name, but for the benefit of himself and plaintiffs according to their respective interests; the premiums therefor being paid by plaintiffs. The goods held by defendant by consignment from plaintiffs were so insured on June 26, 1900, when they were injured by fire. The loss was a very considerable one, and there were a large number of insurance companies involved. Defendant employed a firm of insurance brokers and adjusters to represent and protect his interests and those of plaintiffs, and to take such steps as might be necessary to secure an adjustment, appraisement, and payment of the loss occasioned by the fire. He also employed an attorney to advise concerning certain questions of law which appeared to be involved. The proceedings looking to an adjustment of the loss proceeded until the damage to the stock of goods was fixed at $165,407.84, and the actual cash value of the goods insured before the fire at $230,-044.97. The insurance companies elected to exercise the option reserved to them by the terms of the policies, and took the entire stock of insured goods at the amount appraised as the net cash value before the fire, and paid the amount thereof to defendant, who paid over to plaintiffs, or accounted to them, for the whole amount received by him, excepting the sum of $14,819.90, which constitutes the amount in controversy in this action. The defendant justifies his retention of this sum as follows: He claims to be entitled to retain the sum of $7,489.86, being 3¼ per cent. upon the amount collected from the insurance companies, as commissions agreed to be paid to him upon the sale of the consigned goods. He claims to be entitled to retain $6,830.44, the sum paid by him to the insurance adjusters employed by him for their services in procuring an adjustment of the loss, and he claims to be entitled to retain $500, the expense incurred for the services of the attorney retained by him to advise concerning the claims against the companies. The learned referee has found in defendant's favor upon each of the disputed items, and this appeal challenges the correctness of his conclusions and raises practically no question of fact.

By the terms of this contract between the parties the defendant is made sole factor and selling agent for plaintiffs. All goods are to be consigned to defendant, and sold by him, being invoiced to purchasers in the name of "James Talcott, Wertheimer & Co. Department," and defendant is to pay the expense of a bookkeeper to supervise the books and accounts used in the business of the agency. Defendant was also to supervise the credits, keep books of account, ledger, etc., at his main store, Nos. 108–110 Franklin street (not the place in which the goods were kept and sold), and to furnish the employés, attend to collection of accounts, correspondence; and all other necessary details connected with this business (i. e., at the main store in Franklin street),

at his own expense. Plaintiffs were to pay all other expenses incurred in conducting the business, including the rent of any premises which may be selected for said business, salaries of salesmen and other employés (except at defendant's main office in Franklin street), stationery, postage, telegrams, and all office, selling, packing, cartage, storage, and incidental expenses, and premiums for insurances. Defendant was to have exclusive supervision and control of the sale of said consigned goods, and was to decide all questions as to credit to be given to purchasers. It clearly appears from the contract as a whole that, while the legal control and constructive custody of the goods was to be in defendant, the plaintiffs and their employés were to perform the actual work and furnish the necessary means for making sales; the defendant for the protection of his advances retaining a supervision over credits and collecting bills when due. The clause in the contract respecting defendant's compensation reads as follows:

"For his services as such factor and selling agent, James Talcott shall receive three and one-quarter (3¼) per cent. commission, to be computed upon the net amount of sales of said consigned goods. In case all the goods so consigned shall not be sold by said James Talcott, and the part remaining unsold redelivered to Wertheimer & Co., or transferred to other parties at their request, whether on the termination of this agreement or otherwise, Wertheimer & Co. shall pay to James Talcott, for his services in connection with said unsold goods, a commission equal to one and one-half (1½) per cent. of the amount of the advances outstanding at the time the consignment is closed, plus 1 per cent. of the net market value of the said goods so redelivered or transferred."

The defendant's claim, which has been upheld by the referee, is that the exercise by the insurance companies of their option under the policies to take the whole stock of goods, paying the actual cash value thereof as it was prior to the fire, constituted a sale thereof to the companies within the meaning of the contract, and that the defendant thereupon became entitled to full commissions of 3¼ per cent. thereon. With this view we are unable to agree. While the taking over of the whole stock by the companies comprised some of the elements of a sale, such as a transfer of title and possession, and a payment of consideration therefor, we do not consider that it amounted to a sale of the property within the meaning of the contract between the parties to this action. The contract of insurance is primarily and essentially a contract for indemnity, and, while the usual form of policy leaves to the insurer an option, as to the manner of making indemnity, between paying the amount of damage, leaving the damaged goods to the insured, and paying the total value of the goods, taking what is left of them by way of salvage, the contract still remains one of indemnity, and not of purchase. We think that it is very evident, reading the contract between plaintiffs and defendant as a whole, that by the sales of goods upon which defendant was to receive a full commission of 3¼ per cent. were meant and intended commercial sales in the regular course of business, for which precise and elaborate provision was made in the contract, including the services of salesmen, the packing and shipping of goods, the scrutiny and supervision of credits, and the discount and collection of bills. The fact is that in consequence of the fire the goods were disposed of otherwise than by such

a sale as was contemplated by the contract, and for such a disposition the contract makes provision. It is provided that, if unsold goods are transferred to other parties than defendant at the request of Wertheimer & Co., the defendant shall receive $1\frac{1}{2}$ per cent. upon his advances and 1 per cent. on the net market value of the goods. It plainly appears that the plaintiffs were not only willing that the loss should be adjusted by the taking over by the insurance companies of the whole stock of goods, but preferred that method of adjustment, and their expressed desire in that regard may well be considered as equivalent to a request that the goods be transferred to the companies. We consider that the intent of the contract will be carried out if the defendant be held to be entitled to retain the percentages provided for in case the goods remaining unsold be transferred at the request of plaintiffs to other parties than defendant.

As to the fees paid to the adjusters, we think that the case was rightly decided by the referee. The judgment in the action brought by the adjusters against defendant, and of which plaintiffs undertook the defense, did not, perhaps, determine as between these parties that the amount which defendant agreed to pay the adjusters was reasonable; but, even if that question was left open, there is nothing which requires us to hold that it was unreasonable. It was right and proper to engage the services of a skilled adjuster, and while the evidence shows that there was no fixed rule for the compensation of adjusters, and that other persons than those employed by defendant would have done the work more cheaply, it is not shown that defendant was guilty of negligence or of bad faith in employing the adjuster whom he did employ, or in agreeing with him as to the rate of compensation. We find nothing else in the case requiring discussion or criticism.

The judgment should therefore be so modified as to restate the account between the parties, by allowing to the defendant commissions upon the amount received from the insurance companies at the rate provided for in the contract in case unsold goods shall be transferred at the request of plaintiffs to parties other than purchasers in the regular course of trade, with the appropriate adjustment of interest, and, as so modified, should be affirmed, without costs. All concur.

---

(118 App. Div. 858)

NICHOLSON v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

CARRIERS—PENALTIES—REFUSAL TO GIVE TRANSFER — PASSENGER IN GOOD FAITH.

The penalty for refusal to give a transfer to "any passenger desiring to make one continuous trip" between any two points on a street railroad system imposed by Laws 1892, p. 1406, c. 676, amending Laws 1890, p. 1114, c. 565, § 105, cannot be recovered by one who demanded a transfer with the sole object of recovering for refusal.

Appeal from Appellate Term.